[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Gay and Lesbian Law Students Association of the University of Connecticut School of Law (UCONN), is an unincorporated association of students at the UCONN law school. Said association is "dedicated to providing a supportive network for gay students, promoting the needs of gay students within the Law School and the legal profession, and to developing an awareness of discrimination and other issues which affect lesbians and gay men in our society." (Plaintiff's Exhibit K, Page 55). The majority of its members are gay.
The defendants are the Board of Trustees of UCONN; Harry J. Hartley, President of UCONN; and Hugh C. MacGill, Dean of the Law School.
Plaintiff seeks a preliminary injunction barring defendants from refusing to enforce Public Act 91-58, refusing to enforce the Law School's non-discrimination policy, and refusing to enforce the provisions of Connecticut General Statutes 10a-149a. Plaintiff seeks to bar defendants "from permitting any organization that discriminates on the basis of sexual orientation from using on-campus employment recruiting facilities or other employment services of UCONN Law School and its Office of CT Page 9361 Career Services." (Complaint, Prayer for Relief)
Although the complaint seeks an injunction in regard to "any organization" that discriminates, plaintiff is specifically seeking an injunction in regard to the military branches of the government. According to the stipulation of facts submitted by the parties dated October 6, 1992, all employers who use the services of the Office of Career Services, except military recruiters, are required to abide by the Law School's non-discrimination policy. Also, each potential employer, except a military recruiter, is required to certify in writing, prior to engaging in on-campus interviews, that it conforms to the Law School's non-discrimination policy barring discrimination on the basis of sexual preference. It has been further stipulated by the parties (and testified to by a member of the armed forces) that all branches of the United States military service, including the Judge Advocate General Corps of the Army, Navy, Marines and Air Force, continue to discriminate against gay men and lesbians in hiring and employment. The Department of Defense has a written policy of barring lesbians and gay men from employment with the military. (See Department of Defense Directives 1332.14 and 1332.30)
At the outset the court notes that no branch of the military has been brought in as a party to this action. However, the court does not believe that the military is a necessary party. Although federal law allows the military to discriminate based on sexual preference, the court finds no federal law which requires state institutions (such as UCONN Law school) to allow the military on campus for recruiting purposes. Thus, the state statutes discussed below have not been preempted by federal law.
At issue in this case is the interpretation of two state statutes, namely Public Act 91-58 and General Statutes 10a-149a.
Public Act 91-58 (entitled "An act concerning Discrimination on the Basis of Sexual Orientation") provides the following pertinent sections:
Section 9(a) of Public Act 91-58 provides:
CT Page 9362 "All services of every State agency shall be performed without discrimination based upon sexual orientation."
Section 9(b) of Public Act 91-58 provides:
 "No state facility may be used in the furtherance of any discrimination, nor may any state agency become a party to any agreement, arrangement or plan which has the effect of sanctioning discrimination."
Section 10(a) of Public Act 91-58 provides:
 "All state agencies, including educational institutions, which provide employment referrals or placement services to public or private employees, shall accept job orders on a nondiscriminatory basis."
Section 10(b) of Public Act 91-58 provides:
 "Any job request indicating an intention to exclude any person because of sexual orientation shall be rejected."
Section 35 of Public Act 91-58 provides:
 "Any person claiming to be aggrieved by a violation of any provision of section 46a-70
to 46a-78, inclusive, or sections 8 to 15 inclusive, of this act may petition the superior court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable."
General Statutes 10a-149a provides as follows:
 "Notwithstanding any other provision of law to the contrary, each constituent unit of the state system of higher education and any private college or university which receives state funds shall. . .provide the same directory information and on-campus recruiting opportunities CT Page 9363 to representatives of the armed forces of the United States of America and State armed services as are offered to nonmilitary recruiters or commercial concerns."
Defendants claim that Public Act 91-58 does not apply to the military, because of the provisions of General Statutes 10a-149a. They interpret 10a-149a to mean that notwithstanding the provisions of P.A. 91-58, the law school is required to provide directory information and on-campus recruiting opportunities to the military even though the military discriminates on the basis of sexual orientation. The plaintiffs, however, interpret General Statutes 10a-149a to mean that the law school is only required to provide "the same directory information and on-campus recruiting opportunities" to the military "as are offered to nonmilitary recruiters or commercial concerns." The court finds the interpretation presented by the plaintiff to be far more reasonable.
Section 10a-149a repealed an earlier statute, P.A. 83-576, which granted an unconditional right of access to state schools for military recruiters. The 1983 act, unlike General Statutes 10a-149a, did not merely require the same recruiting opportunities for the military, but flatly stated that "(t)he Board of trustees shall be prohibited from denying access to any campus under its jurisdiction to any representative of the armed forces of the United States who seeks entrance onto any such campus for the purpose of conducting job interviews." P.A. 83-576. Thus, the 1983 statute required the University of Connecticut to provide campus recruiting to the military under all circumstances. That statute was repealed, however, and the present statute merely requires the same recruiting opportunities for the military as are provided to non-military recruiters.
The legislative history of 10a-149a further supports the plaintiff's reading of the statute. Remarks made on the floor of the House of Representatives indicated that "recruiters for the armed services will be treated on exactly the same basis with no exceptions as any other job recruiter on any high school or college campus in the state." House Proceedings, Wed., April 4, 1984 at page 964. Louis Wein, a major in the United States Marine CT Page 9364 Corps, appeared before the Education Committee of the House of Representatives on March 12, 1984 to request that HB5371 (now General Statutes 10a-149a) be passed. He stated in pertinent part:
 "The anti-Vietnam era hopefully is drawing to a close, and what we are asking for in Bill 5371 is that military recruiters are given equal access, not preferential access, but equal access to schools. The same access that a school would provide to another business or an educational institution. . . ."
The prohibitions in sections 9 and 10 of P.A. 91-58 against a state institution using its job placement office to assist an employer who discriminates contain no hint of an exception in regard to the military. If the Legislature intended that state institutions could assist some employers (such as the military) who discriminate and not others who discriminate, the drafters of the gay rights bill could have crafted such an exception. In fact, the gay rights statute does contain an exception that pertains to one aspect of the military. Section 19 removes "the conduct and administration of a ROTC program" from the reach of the legislation. Thus, the Legislature considered the military in enacting the gay rights bill and chose to allow only this one narrow exception to the legislation's scope.
In light of the above, the court holds that General Statutes 10a-149a requires that the law school treat military recruiters exactly the same as non-military recruiters. They are to receive no special treatment merely because they are military recruiters. Thus, if they discriminate on the basis of sexual orientation, they must be treated as any other employer who discriminates on the basis of sexual orientation.
The court further holds that sections 9 and 10 of P.A. 91-58 apply to all employers, whether they be private or military employers. Therefore, the Law School may not provide recruitment services to the military (any more than any other employer) where such service will cause discrimination based upon sexual orientation. The plain meaning of General Statutes 10a-149a and P.A. 91-58 are CT Page 9365 consistent and thus defendants' assistance to the military is unlawful so long as the military continues to discriminate on the basis of sexual preference.
Defendants claim that the plaintiff has failed to show irreparable harm, and is therefore not entitled to an injunction. However, Section 35 of P.A. 91-58 specifically allows an aggrieved person to petition the Superior Court for relief when there is a violation of the appropriate sections (9 and 10) of the Gay Rights Act. Clearly, the plaintiff is aggrieved inasmuch as many of its members are within the very class which the statute seeks to protect. The law school's assistance in securing employment is one of the most important services that the law school provides. However, it has given an employer (specifically, the military) the license to discriminate through the use of the school's services and facilities. As a result of the school's policy and practices, gay and lesbian members of plaintiff association have been offered fewer placement opportunities than heterosexual students. They have suffered stigma, humiliation, and the loss of professional and educational benefits as a result of defendants' unlawful conduct.
When the court finds a violation of P.A. 91-58, it may grant such relief, by injunction or otherwise as it deems just and suitable. (P.A. 91-58, Section 35) The court finds that the most just and suitable relief is an order restraining the defendants from their continued violation of the Gay Rights Act.
Accordingly, the court grants a preliminary injunction barring defendants from permitting any organization (including the military) that discriminates on the basis of sexual orientation from using on-campus employment recruiting facilities or other employment services of the University of Connecticut Law School and its Office of Career Services.
Allen, J.